```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| INTERNATIONAL FOOD SERVICE PURCHASING GROUP, INC., <br><br>**Plaintiff,**<br><br>v.<br><br>CHICAGO PREMIUM STEAKS, LLC, *et al.*,<br><br>**Defendants.** | **Civil No.** 20-1162 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is defendants Chicago Premium Steaks, LLC ("Chicago Premium"), Best Chicago Meat Company, LLC ("Best Chicago"), and Brandon Beavers ("Beavers") (collectively, "defendants")'s motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Docket No. 14.) The defendants also move to change venue pursuant to 28 U.S.C. § 1404(a) ("section 1404"). Id. For the reasons set forth below, the defendants' motion to change venue is **GRANTED**, and the motion to dismiss is **MOOT**.

I.  **Factual Background**

Plaintiff International Food Service Purchasing Group, Inc. ("IFSPG") alleges that the defendants sold and delivered inedible skirt steaks and other cuts of meat in violation of multiple

purchase agreements (hereinafter, "District of Puerto Rico action"). This litigation is the most recent iteration of an ongoing dispute between the parties. Two months before the commencement of this litigation, IFSPG removed a civil action from Illinois State Court to the United States District Court for the Northern District of Illinois (hereinafter, "Northern District of Illinois action"). See Chicago Premium Steaks, LLC v. Int'l Food Purchasing Grp., Inc., Case No. 20-215 (N.D. Ill. Oct. 10, 2020) (Notice of Removal); Chicago Premium Steaks, LLC v. Int'l Food Purchasing Grp., Inc., Case No. 2019L000440 (Cir. Ct. Cook Cty. Nov. 14, 2019) (Complaint). The Court takes judicial notice of the pleadings and orders filed and issued in the Northern District of Illinois and Illinois State Court actions. See Rodríguez-Torres v. Gov't Dev. Bank of P.R., 750 F. Supp. 2d 407, 411 (D.P.R. 2010) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if [they] have relevance to the matters at hand.") (Besosa, J.) (internal citation omitted).

**A. The Purchase Agreements and Breach of Contract Allegations[1]**

Chicago Premium and Best Chicago are limited liability companies, both organized in Delaware and based in Chicago, Illinois. (Docket No. 12, Ex. 1 at p. 3.) They produce and sell

---

[1] The citations refer to the District of Puerto Rico action unless otherwise indicated.

meat products, including "USDA CHOICE" skirt steaks.  Id.  Beavers is the president and chief purchasing officer of Chicago Premium.  Id.  IFSPG is a Puerto Rico corporation "dedicated to, among other things, the distribution of meat products in Puerto Rico, the Caribbean, and South America."  (Docket No. 12, Ex. 1 at p. 1.)

On September 16, 2016, IFSPG and Chicago Premium established a distribution "relationship" concerning meat products of a specific "grade and quality."  Id.  In accordance with this relationship, IFSPG purchased a bulk quantity of steaks from Chicago Premium on September 27, 2017 and July 29, 2018.  Id.  Subsequently, IFSPG distributed the steaks to restaurants in Puerto Rico.  Id.  Diners repeatedly rejected the meat products, claiming that they were "not apt for human consumption."  Id.  In sum, diners refused to consume "around 800 to 900 meals" because the steaks were rancid and unacceptable.  Id.

IFSPG requested that Chicago Premium resolve the "problem with the skirt steaks."  Id. at p. 5.  The president of Chicago Premium, Chris Koziol ("Koziol"), allegedly apologized to Charles Maxwell ("Maxwell"), the president of IFSPG.  Id.  Koziol disclosed that a "meat producer had injected the cattle with a certain enzyme," resulting in "inferior and defective products."  Id.  Although Chicago Premium labeled the skirt steaks "USDA CHOICE," the "actual product received by IFSPG was not of that grade and

quality." Id. The vice president of Chicago Premium, Kris Ligas ("Ligas"), purportedly acknowledged that the company "would change the labels to make [the meat] appear [to be] of higher quality." Id.

After the skirt steak controversy, Chicago Premium delivered "incomplete orders to IFSPG." Id. at p. 6. By October 2018, it refused to fulfill and process any orders for meat products. Id. Consequently, IFSPG lost several chain restaurant customers. Id.

Paul Dwyer ("Dwyer") is the chief financial officer of Best Chicago and Chicago Premium. Id. In January 2019, he sent an e-mail to Maxwell requesting that IFSPG remit "full payment" for "orders of defective meat products." Id. Before this e-mail, "IFSPG had only done business with Chicago Premium, not Best Chicago." Id. Dwyer informed IFSPG that the companies "were related entities and that he was CFO for both." Id. at p. 7. IFSPG attempts to pierce the corporate veil by contending that Best Chicago is liable for the transgressions allegedly committed by Chicago Premium *i.e.* breach of contract. Id.

IFSPG also asserts Beavers disparaged Maxwell by referring to him as a "deadbeat." Id. Beavers allegedly called Gary Meixelsperger ("Meixelsperger"), the president of Texas Food and "one of IFSPG's most important product suppliers." Id. He cautioned Meixelsperger that Maxwell "did not pay, among other

derogatory statements, and [warned] him to be careful so that what happened between [Chicago Premium] and [IFSPG] did not happen to [Texas Food]." Id. After the telephone conversation with Beavers, Meixelsperger called Maxwell to "insult him, tell him that he owed him money . . . and to lower [IFSPG'] balance to $0.00 as soon as possible." Id. Consequently, IFSPG "had to reorganize all pending business to [pay] the credit line balance with Texas Food." Id. at p. 8.

### B. The Northern District of Illinois Action

Chicago Premium commenced an action against IFSPG on November 18, 2019 in the Circuit Court of Cook County, asserting account stated and breach of contract causes of action.[2] (Case No. 20-215, Docket No. 1, Ex. 1 at pp. 3—6.) The allegations set forth by Chicago Premium in Illinois State Court and by IFSPG in the District of Puerto Rico arise from the same nucleus of facts.

Chicago Premium alleges that between August and October of 2018, IFSPG purportedly purchased "various cuts of meat" for approximately $330,561.38. Id. at p. 4. IFSPG received the meat products but paid only "$1,657.46, leaving an outstanding balance due and owing in the amount of $328,903.92." Id. at p. 4.

---

[2] In Illinois, an "account stated" is "an agreement between parties who previously engaged in transactions that the account representing those transaction is true and the balance stated is correct, together with the promise for the payment of the balance." Dryer Med. Clinic, S.C. v, Corral, 227 Ill. App. 3d 221, 226 (1992).

According to Chicago Premium, IFSPG "did not object to any of the meat deliveries." Id. at p. 6.

IFSPG filed an answer on September 19, 2019, asserting "prior breach of contract" as an affirmative defense. Id. at p. 38. IFSPG alleged that:

> [Chicago Premium] sold and shipped to IFSPG meat of inferior quality to what IFSPG ordered and [Chicago Premium] promised to sell and ship. IFSPG rejected in a timely manner the meat sold and shipped . . . [At] least one IFSPG customer refused or returned to IFSPG the meat sold [by Chicago Premium] . . . Also, as a result of the inferior quality of the meat sold and shipped by [Chicago Premium], IFSPG lost the business of the customer who rejected, refused or returned to IFSPG the meat sold . . . and was thereby deprived of the profit IFSPG had previously realized from that business.

Id. at pp. 38-39. After filing an answer, IFSPG issued "interrogatories limited to the question of diversity." Id. at p. 43. On January 10, 2020, IFSPG removed the Illinois State Court action to the United States District Court for the Northern District of Illinois. Id., Docket No. 1.

### C. International Food Service Purchasing Group Petitions for Chapter 11 Bankruptcy

IFSPG filed a voluntary petition in the United States Bankruptcy Court for the District of Puerto Rico on March 20, 2020. In re. Int'l Food Purchasing Grp., Inc., Case No. 20-1458 (MCF), Docket No. 1. The petition stipulated that Chicago Premium Steaks possesses a disputed and unsecure claim to $263,463.52. Id. at p.

8. Subsequently, IFSPG notified the Northern District of Illinois that "pursuant to 11 U.S.C. § 362(a), the filing of a bankruptcy petition operates as a stay, applicable to all entities, of this civil action." Case No. 20-215, Docket No. 16.

### D. The District of Puerto Rico Action

After IFSPG initiated the bankruptcy petition and the Northern District of Illinois action, Chicago Premium Steaks filed a notice of removal before this Court. (Docket No. 1.) IFSPG commenced an action in the Court of First Instance, San Juan Superior Court on December 20, 2019, a month after the complaint in the Illinois State Court action. (Case No. 20-1162, Docket No. 12, Ex. 1; Case No. 20-215, Docket No. 1, Ex. 1.) In the Court of First Instance complaint, IFSPG sets forth four causes of action, including: (1) breach of contract pursuant to P.R. Laws Ann. tit. 31, section 3018, (2) bad faith in the performance of contractual obligations ("dolo") pursuant to P.R. Laws Ann. tit. 21, section 3404, (3) termination of a distribution agreement without just cause pursuant to Law 75, P.R. Laws. Ann. tit. 10, section 278a,

and (4) defamation pursuant to P.R. Laws Ann. tit. 32, section 3143.  Id. at pp. 8—14.[3]

The defendants filed a notice of removal on March 26, 2020. (Docket No. 1.)[4]  They move to dismiss the complaint for two reasons.  (Docket No. 14.)  First, the defendants argue that this Court lacks personal jurisdiction.  Id. at p. 3.  Second, Chicago Premium, Best Chicago, and Beavers contend that "Puerto Rico is not the proper venue."  Id. at p. 19.

---

[3] IFSPG classifies "damages for breach of contract" as a separate cause of action. (Docket No. 12, Ex. 1 at p. 9.)  The Court construes the breach of contract and damages for breach of contract as a single cause of action.  Law 75, also known as the Dealers' Contract Law, provides that:

> [in the absence of a] clause reserving to the parties the unilateral right to terminate the existing [distribution] relationship, no principal or grantor may directly or indirectly perform an act detrimental to the established relationship or refuse to renew said contract in its normal expiration, except for just cause.

P.R. Laws Ann. tit. 10, § 278(a).

[4] The automatic stay shields IFSPG from claims asserted by creditors and other interested parties.  See 11 U.S.C. § 362(b)(1)(6) ("[A]ny act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title" is held in abeyance unless otherwise indicated by the Bankruptcy Court).  Courts have determined, however, that "the debtor [may] file suit in any forum without first securing authorization from the bankruptcy judge."  Bohack Corp. v. Borden, Inc., 599 F.2d 1160, 1168 (2d Cir. 1979); see Rivera-Colón v. Padilla-Ferrer, Case No. 00-2351, 2003 U.S. Dist. LEXIS 12434 *2 n.1 (D.P.R. July 14, 2003) (noting that "actions initiated by the debtor, although not referred [to] directly under § 362(b), and neither specifically enumerated in § 362(a), are not stayed by the Bankruptcy Code.") (Castellanos, Mag. J.).  Accordingly, the Northern District of Illinois action is subject to the automatic stay, but the District of Puerto Rico action may proceed because IFSPG (the debtor) filed suit against the defendants.

## II. Change of Venue Pursuant to 28 U.S.C. Section 1404

Pursuant to section 1404, "a district court may transfer any civil action to any other district or division where it might have been brought for the convenience of the parties, witnesses, and in the interest of justice." 28 U.S.C. § 1404(a). Congress adopted this statute "to prevent the waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (citation omitted). Chicago Premium, Best Chicago, and Beavers shoulder the burden of demonstrating that transfer is proper. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 13 (1st Cir. 2009). There is a "strong presumption in favor of the plaintiff's choice of venue." Arroyo-Pérez v. Demir Grp. Int'l., 733 F. Supp. 2d 314, 319 (D.P.R. 2010) (citations omitted) (Arenas, Mag. J.).

Courts possess discretion in "adjudicat[ing] motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Astro-Med, Inc. 591 F.3d at 12. To determine whether transfer is warranted, courts consider the following four factors: (1) the convenience of the parties and witnesses, (2) the availability of documents, (3) the possibility of consolidation, and (4) the order in which the district court obtained jurisdiction." Albizu-Rodríguez v. Carlos

Albizu Univ., 585 F. Supp. 2d 240, 244 (D.P.R. 2008) (Besosa, J.) (citation omitted). The "first-filed" rule pertains to the fourth factor. This principle holds that "where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision." Coady v. Ashcraft & Gerel, 224 F.3d 1, 11 (1st Cir. 2000) (citing Cianbro Corp. v. Curran Lavoie, 814 F.2d 7, 11 (1st Cir. 1988).

### III. Discussion

As a threshold matter, this action could have commenced in the Northern District of Illinois. A district court has original jurisdiction of all civil actions between citizens of different states where the matter in controversy exceeds $75,000. 28 U.S.C. § 1332(a). The monetary demand is ambiguous, seeking a sum "to be determined at trial." (Docket No. 12, Ex. 1 at p. 14.) IFSPG has set forth sufficient allegations, however, to establish that the amount in controversy exceeds $75,000. See Universal Ins. Co. v. Warrantech Corp., 392 F. Supp. 2d 205, 208 (D.P.R. 2005) ("A case should be dismissed for failing to meet the jurisdictional amount requirement only if there is a legal certainty that the plaintiff cannot recover an excess of $75,000.") (citation omitted) (García, J.). As evidenced by the discovery conducted in the Northern

District of Illinois action, IFSPG, Chicago Premium and Beavers are diverse.  See Case No. 20-215, Docket No. 1 at p. 5 (stating that there is "complete diversity of citizenship").  Moreover, Chicago Best is a citizen of Illinois. (Docket No. 1.)  Accordingly, IFSPG could have filed suit in the Northern District of Illinois.

**A.   The Convenience of the Witnesses**

In the context of section 1404, "the convenience of witnesses is probably the most important factor in deciding whether to transfer." Ponce de León Hosp. Corp. v. Avalon Logistics, Inc., 117 F. Supp. 3d 124, 132 (D.P.R. 2015) (citation omitted) (Domínguez, J.).  The movant must "show that it would be inconvenienced by the chosen venue." Arroyo-Pérez, 733 F. Supp. 2d at 319 (citation omitted).  Courts consider "the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify." Bowen v. eLanes N.H. Holdings, LLC, 166 F. Supp. 3d 104, 109 (D. Mass. 2015) (citation omitted).

Most of the potential witnesses are located in Illinois, including Beavers, Koziol, Ligas, Dwyer and personnel employed by Chicago Premium and Chicago Best.  (Docket No. 12, Ex. 1.)  Maxwell is the only resident of Puerto Rico named in the complaint.  Id.  Pursuant to Federal Rule of Civil Procedure 32 ("Rule 32"), the

parties "may use for any purpose the deposition of a witness, whether or not a party, if the court finds . . . that the witness is more than 100 miles from a place of a hearing or trial." Fed. R. Civ. P. 32(a)(4). Chicago Premium and IFSPG may move to introduce deposition transcripts of Puerto Rico residents with knowledge of the allegedly defective meat products pursuant to Rule 32. Accordingly, the first factor of the section 1404 analysis militates toward transfer.

### B. The Availability of Documents

The availability of documents is not dispositive. "Due to recent technological advances, reliance on physical copies of documents and records has diminished now that documents have become more accessible through electronic means." Ponce de León Hosp. Corp., 117 F. Supp. 3d at 133 (citation omitted). Chicago Premium and IFSPG engaged in remote business transactions, producing electronic proof of purchase. (Case No. 20-215, Docket No. 1, Ex. 1 at pp. 7—16.) Indeed, the purchase orders and invoices are published on the Northern District of Illinois docket. Id.

### C. The Possibility of Consolidation and the Order of Litigation

The third and fourth factors of the section 1404 analysis "prevent duplication and inconsistent rulings." Arroyo-Pérez, 733 F. Supp. 2d at 321. Transfer is appropriate when the actions

Civil No. 20-1162 (FAB)                                                13

subject to consolidation are in the early stages of litigation. Cf. Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 739 (1st Cir. 1977). The fourth factor establishes that "the first filed action is generally preferred in a choice-of-venue decision." Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987); see N.Y. Wiping & Indus. Prod. Co. v. Rocky Brands, Inc., Case No. 09-1237, 2009 U.S. Dist. LEXIS 77827 at *6 (D.P.R. Aug. 31, 2009) ("Where the parties have filed two actions in separate districts, however, and the actions are nearly identical, 'the first-filed action is generally preferred in a choice of venue decision.'") (citation omitted) (Fusté, J.).

The Northern District of Illinois and the District of Puerto Rico actions are both in the early stages of litigation. The former is stayed pursuant to section 362 because IFSPG filed a bankruptcy petition. See Case No. 20-215, Docket No. 16 (Notice of Automatic Stay). The allegations and causes of action set forth by Chicago Premium and IFSPG are nearly identical. For instance, both parties invoke the breach of contract statute in their respective jurisdictions. (Case No. 20-215, Docket No. 1, Ex. 1; Case No. 20-1162, Docket. 12, Ex. 1.) The affirmative defense raised by IFSPG in the Northern District of Illinois action is merely a harbinger of the District of Puerto Rico complaint. Although the District of Puerto Rico and the First Circuit Court

Civil No. 20-1162 (FAB) 14

of Appeals adjudicate Law 75 actions with more frequency, courts in other jurisdictions have resolved claims arising from this statute on numerous occasions.[5] Accordingly, consolidation is feasible and serves to avoid the waste of judicial resources.

The Northern District of Illinois action predates the District of Puerto Rico action by two months. Case No. 20-215, Docket No. 1 (Notice of Removal, Jan. 10, 2020); Case No. 20-1162, Docket No. 1 (Notice of Removal, Mar. 26, 2020). Because the factors in favor of transfer predominate, the defendants' motion to change venue is **GRANTED**.

**IV. Conclusion**

For the reasons set forth above, the Court **GRANTS** the defendants' motion to transfer. (Docket No. 14.) Accordingly, this action is **TRANSFERRED** to the Northern District of Illinois.

---

[5] See Caguas Lumber Yard Inc. v. Ace Hardware Corp., 827 F. Supp. 2d 76, 83 (D.P.R. 2011) (transferring Law 75 action to federal court in Illinois) (citation omitted) (Vélez-Rive, Mag. J.); Outeck Carribean Distribs. v. Echo, Inc., 206 F. Supp. 2d 263, 270 (D.P.R. 2002) (noting that "transfer in the present case could be not the first time that a court outside of Puerto Rico has heard a Law 75 claim") (citing cases) (Laffitte, J.); Caribbean Wholesales & Serv. Corp. v. US JVC Corp., 885 F. Supp. 627 (S.D.N.Y. 1994) (denying motion to dismiss in a Law 75 action commenced in Puerto Rico Superior Court, removed to the District of Puerto Rico, then transferred to the Southern District of New York); Harley-Davidson Motor Co. v. Motor Sport, 6 F. Supp. 2d 996 (E.D. Wis. 1997) (granting summary judgment in a Law 75 action); Tracker Marine v. Sunset Marine of P.R., Case No. 11-3238, 2012 U.S. Dist. LEXIS 203700 *5 (W.D. Mo. Jan 20, 2012) (denying motion to transfer Law 75 action, rejecting "argument that the district court in Puerto Rico would be better able to hear the case in light of its familiarity with [the statute]") (citation omitted); BMJ Foods P.R., Inc., v. Metromedia Steakhouses Co., 562 F. Supp. 229, 234 (D.P.R. 2008) (holding that "an unsubstantiated feat that the transferee court might err in the application of Puerto Rico law does not overcome other factors that weigh heavily in favor of transferring venue to the forum of first filing") (McGiverin, Mag. J.).

Civil No. 20-1162 (FAB)                                                    15

¡Adios!   The motion to dismiss is **MOOT**.   This case is now closed for administrative purposes.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 31, 2020.

                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE